**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| _____ : | Civil Action No. 16-9147 (FLW)(LHG) |
| ROBERT J. IANUALE and PHILIP J. : | |
| IANUALE, : | |
| : | **OPINION** |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| BOROUGH OF KEYPORT, KEYPORT : | |
| POLICE DEPARTMENT, CHIEF OF : | |
| POLICE GEORGE CASALETTO, *in his* : | |
| *personal, individual, and official capacities*, : | |
| SERGEANT MICHAEL A. FERM, *in his* : | |
| *personal, individual, and official capacities*, : | |
| PATROLMAN KEVIN BENNETT, *in his* : | |
| *personal, individual, and official capacities*, : | |
| PATROLMAN GREGORY JOHNSON, *in* : | |
| *his personal, individual, and official* : | |
| *capacities*, JOHN DOE KEYPORT : | |
| POLICE OFFICERS 1-25 {fictitious : | |
| employees of the Keyport Police : | |
| Department}, *in their personal, individual,* : | |
| *and official capacities*, : | |
| : | |
| Defendants. : | |
| : | |

**WOLFSON, United States District Judge:**

Pending before the Court are two separate motions for summary judgment filed by 1) the

Borough of Keyport, Keyport Police Department, and Keyport Chief of Police George Casaletto,

("Keyport Defendants"); and 2) Sergeant Michael A. Ferm, Patrolman Kevin Bennett, and

Patrolman Gregory Johnson ("Officer Defendants" or "the officers") (collectively "Defendants").

The present dispute stems from an alleged false arrest and use of excessive force by Officer

Defendants. Plaintiffs Robert Ianuale ("Robert") and Philip Ianuale ("Philip") (collectively,

"Plaintiffs"), who are proceeding *pro se*, bring seventeen claims seeking punitive and compensatory damages for alleged violations of constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and for various violations of New Jersey state law. Defendants move for summary judgment on the basis of qualified immunity, and good faith immunity, under the New Jersey Tort Claims Act. Keyport Defendants also assert that Plaintiffs fail to prove a claim for *Monell* liability against them.

For the reasons that follow, Defendants' motions for summary judgment are granted, and all claims against Defendants are dismissed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are brothers who reside in Hazlett, New Jersey. Plaintiffs' Statement of Material Facts ("PSMF") at ¶¶ 1-2. The incident that forms the basis of Plaintiffs' Complaint took place at a commercial property that Robert leased at 52 Broad Street in Keyport, New Jersey. *Id.* at ¶ 3. On December 13, 2014, at around 4:50 am, Officers Ferm, Bennett and Johnson responded to a phone call that Robert placed to the Keyport Police Department. Defendants' Statement of Material Facts ("DSMF") at ¶¶ 14--15. Although the Police Department's Call for Service Details Report indicates that the call involved a "domestic in progress at 52 Broad Street, Flr 3," and that a "male caller reported a fight involving his brother," *id.* at ¶ 16, Plaintiffs contend that Robert called the police department's non-emergency number for assistance in mediating a non-violent dispute between the brothers. PSMF at ¶ 9.

When the officers arrived at the property before dawn, they were greeted at the door by a female, identified as Shauna Alvarez. PSMF at ¶ 11; DSMF at ¶ 17. Plaintiffs' and Defendants' accounts of what happened next differ. According to Plaintiffs, Officer Defendants pushed past Alvarez, walked up three flights of stairs, and entered the third-floor office, where

the Plaintiffs were located. PSMF at ¶ 13. Plaintiffs contend that they immediately conveyed to the officers that all was in order, the officers' assistance was no longer needed, and that they should leave the premises. *Id.* at ¶ 14. They insist that they told the officers that there had been no fight. *Id.* at ¶ 17.

Officer Defendants, on the other hand, contend that, once Alvarez answered the door, she told the officers that the brothers were "out of control" and willingly led them upstairs to the apartment. DSMF at ¶ 17; Certification of Charles J. Uliano, Esq. ("Uliano Cert."), Exs. C, D. In addition, the officers heard "yelling and screaming" coming from Plaintiffs' apartment. Uliano Cert., Exs. C, D. Upon entering the apartment, Officer Defendants immediately noticed signs that a physical altercation had taken place, including broken vodka bottles on the floor, and noticed signs of physical injury on both men. DSMF at ¶¶ 18-19; Uliano Cert., Exs. C, D. As such, the officers determined that both men should be placed under arrest for simple assault in connection with what they viewed as a domestic violence incident. DSMF at ¶ 20.

Plaintiffs and Defendants also dispute the manner in which the arrest of the Ianuale brothers occurred. According to Plaintiffs, Ferm first placed Robert in a compliance hold, violently swinging his "body around 360 degrees and harming [his] left shoulder and wrist" while handcuffing him. PSMF at ¶ 18. Then, according to Plaintiffs' version of events, Philip, who had been given no notice that he was under arrest, stated "I'm going home," opened up the door to exit the apartment, and held it open with his right hand, in order to allow Officer Ferm, who was escorting the detained Robert, "clear and safe passage." *Id.* at ¶ 20. At that point, Officer Bennett "jumped on [Phillip's] back," causing him to be "violently thrown down two

flights of stairs." *Id.* at ¶ 22. "In fear for his life," Phillip then "got to his feet and proceeded down the remaining stairs in order to put distance between him and his assailant." *Id.* at ¶ 24.[1]

Defendants tell a different story. According to their version of events, Robert complied with orders and was placed under arrest without incident. DSMF at ¶ 21. Philip, however, ran towards the door, and sent himself and Bennett, who was blocking his path, hurtling down the stairs. *Id.* at ¶ 22. Philip then got up and, leaving the injured Bennett on the floor, continued down the stairs, while Johnson gave chase. *Id.* at ¶¶ 24-25. Philip was eventually located hiding at a property nearby, arrested, and charged with aggravated assault (police officer), resisting arrest/eluding officer, possession of CDS paraphernalia; simple assault; possession, use or being under the influence; and obstructing administration of law. *Id.* at ¶ 28. Robert was charged with simple assault (domestic violence). *Id.* at ¶ 27.

According to Plaintiffs, following the arrest, the officers ignored Robert, who was wearing only pajama pants, when he requested permission to fully cloth himself, and forced him outside, and eventually, to the police station. PSMF at ¶ 26. Officer Defendants attempted to have Robert sign a New Jersey Domestic Violence Act Victim Notification Form, listing Philip as the "Offender" and Defendant Johnson as the "Investigating Officer"; however, Robert refused to sign, and he was released and "forced to walk back to Plaintiffs' business premises in only his pajama pants, without a shirt or proper clothes, in freezing temperatures." *Id.* at ¶ 30.

In addition to the alleged incident, Plaintiffs also include facts concerning other interactions between them and the Officer Defendants. Only one such interaction is relevant to

---

[1] Plaintiffs include still images from video surveillance footage as part of their motion, which, they contend, corroborate their version of events. The images, which are grainy and difficult to discern, appear to show Philip and Bennett tumbling down the first flight of stairs, and then Philip fleeing down the remaining stairs while the rest of the officers pursue. There is no indication from the images whether Bennett "tackled" Philip.

any of Plaintiffs' claims, however. Plaintiffs allege that on February 13, 2015, Officer Bennett issued a parking ticket in Philip's name to a vehicle that was registered to his father. *Id.* at ¶ 40. The ticket required a court appearance, but included an incorrect address and was never placed on the vehicle, which, according to Plaintiffs, was an intentional attempt to prevent notices of summons from being delivered to Philip so that a warrant could be issued against him. *Id.* at ¶ 42. On April 29, 2015, the parking ticket was dismissed by a municipal judge. *Id.* at ¶ 49. Robert also contends that he was terminated from his employment at Xerox during a routine background-check in 2015 that uncovered his arrest. *Id.* at ¶ 51.

Based on these allegations, Plaintiff's Complaint raises the following claims:

- Count I, for wrongful arrest and malicious prosecution, against Defendants Michael A. Ferm, Kevin Bennett, and Gregory Johnson;

- Count II, for false arrest and false imprisonment under the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, against all Defendants;

- Count III, for failure to intervene or intercede, pursuant to § 1983, against Defendants Ferm, Bennett, and Johnson;

- Count IV, for malicious prosecution, against all Defendants;

- Count V, for failure to train, under a theory of supervisory liability pursuant to § 1983, against Defendants Keyport, Keyport Police Department, and Casaletto;

- Count VI, for failure to train, under a theory of municipal liability pursuant to § 1983, against Defendants Keyport, Keyport Police Department, and Casaletto;

- Count VII, for unlawful seizure and deprivation of liberty under the New Jersey Civil Rights Act ("NJCRA"), against Defendants Ferm, Bennett, and Johnson;

- Count VIII, for deprivation of rights under the NJCRA, against all Defendants;

- Count IX, for intentional infliction of emotional distress, raised against Defendants Ferm, Bennett, and Johnson;

- Count X, for assault and battery, raised against Defendants Bennett and Keyport;

- Count XI, for malicious prosecution, against Defendants Bennett and Keyport;
- Count XII, for assault and battery, against Defendants Ferm and Keyport;
- Count XIII, for civil conspiracy, against all Defendants;
- Count XIV, for negligent hiring and training, against Defendants Keyport and Keyport Police Department;
- Count XV, for invasion of privacy, against all Defendants;
- Count XVI, for abuse of process, against all Defendants; and
- Count XVII, for violation of Plaintiffs' due process rights, pursuant to § 1983, against all Defendants.

Keyport and Officer Defendants separately move for summary judgment on each of these claims, arguing that the § 1983 and NJCRA claims are barred by qualified immunity, that the New Jersey Tort Claims Act ("NJTCA") immunizes them from the common law tort claims, and that the allegations fail to state a claim for *Monell* liability against Keyport Defendants. Defendants also assert that certain claims are barred by the statute of limitations.

## II. LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson,* 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor .'" *Marino v.*

*Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson,* 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex,* 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence,* 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson,* plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324 (quotations omitted); *see also Matsushita,* 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley,* 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992).

## III. DISCUSSION

Defendants raise several defenses to Plaintiffs' claims: qualified immunity from Plaintiffs' § 1983 claims and NJCRA claims; good faith immunity under the NJTCA from Plaintiffs' common law tort claims; and failure to prove a *Monell* claim against Keyport Defendants. First, Plaintiffs argue that Defendants' summary judgment motions are premature.

### A. Whether Defendants' Summary Judgment Motions Are Premature

Plaintiffs contend that they have not had sufficient time to take discovery, and, as such, the motions for summary judgment should be denied on this basis. The Federal Rules of Civil Procedure put few constraints on the timing of summary judgment motions, stating only that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56 (b). Before deciding a motion for summary judgment, a court "is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Dowling v. City of Philadelphia,* 855 F.2d 136, 139 (3d Cir. 1988). When the party opposing a motion for summary judgment believes more discovery is necessary to oppose the motion, that party should file an affidavit under Rule 56(d) indicating that more discovery is needed. *Radich v. Goode,* 886 F.2d 1391, 1393–94 (3d Cir. 1989) (unverified memorandum opposing motion for summary judgment does not satisfy affidavit requirement); *Dowling,* 855 F.2d at 139–40.  Here, although Plaintiffs have not submitted an affidavit stating the need for more discovery, the Court recognizes that Plaintiffs are *pro so*, and so will construe the argument in their brief as an application under rule 56(d). *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 846 (3d Cir.

1992) (excusing failure to file an affidavit where non-moving party argued in briefs that consideration of summary judgment motion should be postponed until crucial depositions had been taken).

When Defendants assert qualified immunity defenses, courts generally expedite the resolution of dispositive motions. A court should rule "as early as possible in § 1983 proceedings because qualified immunity is not a defense to liability, but rather immunity from the expense and burden of the lawsuit itself." *Ammouri v. Adappt House, Inc.*, No. 05-3867, 2008 WL 2405762, at *8 (E.D. Pa. June 12, 2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Nonetheless, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis," including to the "objective reasonableness of an officer's conduct." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (internal citations omitted).

In the present case, the parties agreed to a pretrial scheduling order on November 17, 2017, that set the discovery end date as April 13, 2018. ECF No. 30. Despite the availability of a five-month window to conduct discovery, Plaintiffs contend that "barely any discovery has been exchanged," and complain that they have yet to subpoena any records or conduct a single deposition. ECF No. 40 at 10. However, Plaintiffs have "not specifically identified the particular discovery needed to oppose defendants' motions…or how that discovery would preclude summary judgment for defendants" or "explained why this discovery has not already been obtained." *Mobley v. City of Atl. City Police Dep't*, 89 F. Supp. 2d 533, 537 (D.N.J. 1999) (ruling on defendant's summary judgment motion on qualified immunity grounds despite plaintiff's objections that he had not obtained sufficient discovery). Moreover, additional

evidence is unlikely to alter the Court's analysis. The Court, therefore, declines to postpone ruling on the summary judgment motions on discovery grounds.

### B. Qualified Immunity of Officer Defendants

Officer Defendants argue that the doctrine of qualified immunity bars Plaintiffs' § 1983 claims against them. "Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Santini v. Fuentes*, 795 F.3d 410, 416–17 (3d Cir. 2015) (quoting *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007)). "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 417 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "The purpose of qualified immunity is to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Id.* An "essential attribute [of absolute and qualified immunity is] an entitlement not to stand trial under certain circumstances," and qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *In re Mushroom Direct Purchaser Antitrust Litig.*, 655 F.3d 158, 164 (3d Cir. 2011) (quoting 472 U.S. at 525–26) (alterations in original).

Courts perform a two-step inquiry to determine whether a particular government official is entitled to summary judgment based on qualified immunity. "First, we ask whether the facts— taken in the light most favorable to the nonmoving party—show that a government official violated a constitutional right." *Santini*, 795 F.3d at 417 (quoting *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). Second, we ask whether that right was clearly established at the time of the official's actions. *Id.* "Where a defendant asserts a qualified immunity defense in a motion for

summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) (internal citations omitted). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." *Id.* (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1533 (10th Cir. 1995)).

For the reasons that follow, Plaintiffs' §1983 claims against Officer Defendants—false arrest/imprisonment, excessive force, failure to intervene, and malicious prosecution—fail, as the factual record does not demonstrate that Defendants violated Plaintiffs' constitutional rights.[2]

### 1. False Arrest/False Imprisonment

Plaintiffs contend that Defendants are not entitled to qualified immunity because the officers effectuated the arrests without probable cause. An "arrest without probable cause is a constitutional violation" and gives rise to a cause of action for false arrest under 42 U.S.C. § 1983. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978); *see also O'Connor v. City of Philadelphia*, 233 Fed.Appx. 161, 164 (3d Cir. 2007). As to first step of the qualified immunity analysis, the "arresting officer's state of mind (except for the facts that he knows)" and the charges "actually invoked by the arresting officer" are irrelevant to determining whether probable cause existed at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)

---

[2] Although Plaintiffs do not assert a claim that Defendants' search of their home qualified as an illegal warrantless search in violation of the Fourth Amendment, their Statement of Material Facts and opposition brief seem to allude to such a claim in their Complaint: i.e. that Officer Defendants "pushed past" Alvarez, who did not own or lease an apartment in the building, and then "illegally" entered Plaintiffs' third floor apartment. Nothing in the record supports such a claim, as Plaintiffs do not state who let Officer Defendants into their apartment/office. Even though the Court construes the filings of *pro se* parties liberally, I need not construe a claim where the Complaint does not assert it.

(citing *Whren v. United States,* 517 U.S. 806, 812–813 (1996); *Arkansas v. Sullivan,* 532 U.S. 769 (2001)). Courts must instead objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable cause existed "as to any offense that could be charged under the circumstances." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005) (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)). Courts must determine "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *accord Devenpeck*, 543 U.S. at 152 ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

Courts must also consider the totality of the circumstances known to the officer at the time of the arrest. *Andrews v. Scuilli*, 853 F.3d 690, 698, 704 (3d Cir. 2017). Probable cause may exist "even in the absence of the actual observance of criminal conduct when a prudent observant would reasonably infer that a defendant acted illegally." *United States v. Burton*, 288 F.3d 91, 98 (3d Cir. 2002) (citing *Illinois v. Gates*, 462 U.S. 213, 243 n. 13 (1983) ("probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.")). Additionally, "[t]he validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "[T]he kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Id.*

Here, the factual record is too conflicting as to whether the officers objectively had probable cause to arrest Plaintiffs. Plaintiffs contend that Officer Defendants lacked probable cause because "Officers Johnson and Ferm did not witness any domestic violence," there were no signs of any physical altercation between the brothers, and "both Plaintiffs in fact told the officers that there was no domestic dispute and requested the officers to leave the premises immediately." ECF No. 40 at 28. According to Plaintiffs, the purpose of the call was merely to request assistance "in mediating a non-violent situation," and that once they arrived, there was no indication of any sort of fight between the brothers. PSMF at ¶ 9. In support of this, Plaintiffs introduce grainy still images from a surveillance camera that purportedly show that the situation was calm. The police Call for Service Report, in contrast, states that there was a "domestic in progress at 52 Broad Street, Flr 3," and that a "male caller reported a fight involving his brother," DSMF at ¶16. Further, the police report that Officers Johnson and Ferm issued after the incident state that once they arrived at the building, the officers heard yelling and screaming from Plaintiffs' apartment, that Alvarez, when she answered the door, told them that the brothers were out of control, and that when the officers entered the apartment, they noticed obvious signs of an altercation, including broken vodka bottles all over the floor and physical injuries to both brothers. ECF No. 37-5, Exs C, D. These conflicting versions of the scene that confronted the officers when they entered the apartment make it unclear whether, objectively, the officers had probable cause to believe that a domestic assault had taken place.

Nonetheless, under the second step the qualified immunity analysis, "even if probable cause [did] not exist in fact, defendants may be entitled to assert a defense of qualified immunity if they reasonably believed that probable cause existed." *Lucia v. Carroll*, No. 12-3787, 2014 WL 1767527, at *4 (D.N.J. May 2, 2014) (citing *Wildoner v. Borough of Ramsey*, 162 N.J. 375,

385 (2000)); *see also Ali v. N.J. State Police Dep't*, 120 F. App'x 900, 902–03 (3d Cir. 2005)

(noting that "[a]lthough [the plaintiff] offers an account of the underlying events differing from

that of the police, the record indicates that the police could reasonably have believed when they

arrested [the defendant] that he had" committed domestic abuse). "Police officers 'can have

reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause,' and

will not be held responsible in court for every act later found to be a constitutional mistake." *Ali*,

120 F. App'x at 902 (quoting *Saucier,* 533 U.S. at 206).

 Based on the undisputed record in the present case, the officers could reasonably have

believed that probable cause existed to arrest Plaintiffs. Here, it is undisputed that the officers,

when they arrived at the apartment, were operating with the knowledge that Robert had

summoned them in the early hours of the morning regarding a domestic altercation. Even if

Robert never stated that the incident was violent, Plaintiffs concede that the officers questioned

the brothers regarding a fight, indicating that the officers had some reason to believe that a

violent dispute might have taken place. *See Ali*, 120 F. App'x at 902–03 (granting police officers'

summary judgment motion on qualified immunity issue in domestic violence case because the

plaintiff, who had himself called the police to report the dispute, claimed "that [the officers]

called him a 'wife abuser,' which indicates that they believed he had at least threatened violence

to his wife"). In addition, Plaintiffs do not specifically dispute the presence of broken liquor

bottles in the apartment, nor that the officers heard yelling and screaming coming from the

apartment. Thus, as in *Ali*, Plaintiffs' own version of events indicates that the officers could

reasonably have believed that they had probable cause to arrest Plaintiffs.

 Thus, qualified immunity bars Plaintiff's false arrest/imprisonment claims against Officer

Defendants.

## 2. Excessive Force[3]

Next, Plaintiffs contend that the officers used excessive force while arresting Robert and Philip. In excessive force cases, courts in the Third Circuit determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test as set forth in *Graham v. Connor,* 490 U.S. 386, 395 (1989). *See Curley,* 499 F.3d at 206–07. To determine objective reasonableness, courts must balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S. at 396, 109 S. Ct. 1865 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)) (internal quotation marks omitted). While this inquiry is "highly individualized and fact specific," the Supreme Court has provided three factors to guide courts through it:

(1) the severity of the crime at issue,
(2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity, and
(3) whether the suspect attempts to resist arrest or flee the scene.

*Santini*, 795 F.3d at 417 (quoting *Graham,* 490 U.S. at 396). *See also Sharrar v. Felsing,* 128 F.3d 810, 822 (3d Cir. 1997) (providing additional factors including "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time").

---

[3] Although Plaintiffs do not assert a standalone excessive force claim, they do assert a "due process" claim, in which they state: "The actions of Defendants Sgt. Michael A. Ferm, Ptl. Kevin Bennett, Ptl. Gregoryc Johnson in their use of their excessive force upon Plaintiffs, unlawful seizure of their person and property of Plaintiffs was intentional, extreme and outrageous." Compl. at ¶ 194. As Defendants are proceeding *pro se,* the Court will construe this as an excessive force claim.

Furthermore, "objective reasonableness" is evaluated "from the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417 (citing *Maryland v. Garrison,* 480 U.S. 79, 85 (1987)). The Third Circuit has summarized this standard, evaluating all of the *Graham* factors and additional *Sharrar* considerations, as employing a "totality of the circumstances" approach for evaluating objective reasonableness. *Id.* (citing *Curley,* 499 F.3d at 207).

Here, Plaintiffs argue that Officer Bennett's purported "tackling" of Phillip as he was attempting to leave, causing both parties to fall down the stairs, constituted excessive force. Applying the *Graham* factors to the present dispute, however, undermines Plaintiffs' position. The first two factors—the seriousness of the crime and the officers' belief that Philip posed an imminent threat to safety—weigh against Plaintiffs' account. Domestic assault is, without doubt, a serious crime[4] and the Officer Defendants could plausibly have concluded that Philip, who they reasonably believed had just committed an act of domestic assault, posed a threat to the safety of others. But it is the application of the third *Graham* factor—Philip's resistance to arrest and attempt to flee the scene—that makes clear that Defendant Bennett did not use excessive force. It is admitted that Philip told the officers "I'm going home" and opened the door. Regardless of whether Philip heard the officers tell him he was under arrest, trying to stop a suspect from leaving a crime scene is objectively reasonable. Plaintiffs do not dispute Defendant's contention that Officer Bennett did not intend to tackle Philip down a steep flight of stairs, and, indeed, it is unlikely that an officer would so willingly jeopardize his own safety. Thus, the picture that

---

[4] Indeed, recognizing the seriousness of the crime, New Jersey has adopted a statute, New Jersey Domestic Violence Act that allows a law enforcement officer to "arrest a person; or…sign a criminal complaint against that person, or may do both, where there is probable cause to believe that an act of domestic violence has been committed." N.J. Stat. Ann. § 2C:25–21(b).

emerges from Plaintiffs' account is one of a suspect to domestic assault attempting to leave a crime scene, an officer attempting to prevent him from doing so, and the pair falling down the stairs. Indeed, that Philip then got up and continued to flee down the stairs while the officers pursued, which Plaintiffs admit and is corroborated by the surveillance images, further supports this finding. Thus, even viewing the facts and their resulting reasonable inferences in Plaintiffs' favor, the totality of circumstances indicate that the Officer Bennett did not use excessive force in arresting Philip. *See Burr v. Hasbrouck Heights Police Dep't*, 131 F. App'x 799, 803 (3d Cir. 2005) (holding that it was objectively reasonable for an officer to grab a suspect who was attempting to exit his apartment in order to prevent him from fleeing).[5]

Thus, Officer Defendants have qualified immunity from Plaintiffs' excessive force claim.

### 3. Failure to Intervene

Plaintiffs next assert a failure to intervene claim under § 1983 against Officer Defendants. When an officer "'fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983.'" *Smith v. Mensinger,* 293 F.3d 641, 650 (3d Cir. 2002) (citing *Bryd v. Clark,* 783 F.2d 1002, 1007 (11th Cir. 1986) (holding that a fact finder could find that an officer had a duty to intervene where he observed an inmate being beaten and could have reasonably responded). However, in order for liability to attach on a failure to intervene basis, there must be "a realistic and reasonable opportunity to intervene." *Id.* at 650–51. In that regard, a plaintiff must establish that the defendant "'observed or had reason to know: (1) that excessive force was being used ...

---

[5] To the extent that Plaintiffs assert an excessive force claim with respect to Robert's arrest, this claim must also fail. Using a routine police arrest method like a "compliance hold" was not excessive under these circumstances. *See Rivera v. Como*, 733 F. App'x 587, 591 (3d Cir. 2018) (placing defendant in compliance hold that broke defendant's wrist "was limited to that reasonably necessary to bring [the defendant] under control and to place handcuffs on him").

and (2) that he had a realistic opportunity to intervene and prevent the harm from occurring.'"
*Roccisano v. Township of Franklin,* No. 11–6559, 2013 WL 3654101, at *10 (D.N.J. July 12, 2013) (internal quotations omitted); *see also Williams v. Fields,* 535 Fed. Appx. 205, 210 (3d Cir. 2013); *Fears v. Beard,* 532 Fed. Appx. 78, 82 (3d Cir. 2013) ("[a]n officer's failure to intervene can be the basis of an Eighth Amendment violation under § 1983 if the officer, upon witnessing another's use of excessive force against a prisoner, had a reasonable opportunity to intervene and simply refused to do so." (internal quotations and citations omitted)).

Plaintiffs argue that Officer Defendants had a clear duty to stop a fellow officer from using excessive force. Here, however, Plaintiff's claim lacks merit because, as already discussed, Officer Defendants did not use excessive force to arrest Plaintiffs. Even if they had, however, the sequence of events, even as described by Plaintiffs, occurred too suddenly for an officer to intervene. *See Epifan v. Roman*, No. 11-02591, 2014 WL 4828606, at *7 (D.N.J. Sept. 29, 2014) (dismissing failure to intervene claim when officers had no "reasonable opportunity to intervene"). Thus, Plaintiffs' failure to intervene claim is barred by qualified immunity.

### 4. Malicious Prosecution

Plaintiffs assert a malicious prosecution claim under § 1983, The elements of such a claim are:

> (1) the defendants initiated a criminal proceeding;
> (2) the criminal proceeding ended in plaintiff's favor;
> (3) the proceeding was initiated without probable cause;
> (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and
> (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

*Kossler v. Crisanti,* 564 F.3d 181, 186-87 (3d Cir. 2009) (quoting *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003)). "Actual malice in the context of malicious prosecution is

defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Morales v. Busbee,* 972 F.Supp. 254, 261 (D.N.J. 1997) (quoting *Lee v. Mihalik,* 847 F.2d 66, 70 (3d Cir.1988)).

Here, Plaintiffs appear to be making two separate malicious prosecution claims. First, they assert that Officer Bennett acted "with reckless disregard for the truth" when he placed a parking ticket and summons to Philip on his father's vehicle, which Plaintiffs argue was an attempt to issue a warrant for Philip's arrest. These allegations cannot form the basis for a malicious prosecution claim, however, because being forced to defend against a parking ticket does not amount to a "deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *See Ali v. Jersey City Parking Auth.*, 594 F. App'x 730, 732 (3d Cir. 2014) (holding that issuance of a summons and appearance at a municipal court to defend against a parking ticket did not constitute a deprivation of liberty for purposes of a malicious prosecution claim).

Plaintiffs also assert that the arrest and imposition of criminal charges in the early morning of December 13, 2014 amounted to malicious prosecution. This claim must also fail, however, as Plaintiffs have not demonstrated that the officers acted with actual malice. As already discussed, the officers reasonably believed that probable cause existed to arrest Plaintiffs. Thus, even if probable cause did not *in fact* exist, the officers did not have a "lack of belief…in the propriety of the prosecution." *Morales*, 972 F.Supp. at 261.

Thus, Plaintiffs' malicious prosecution under § 1983 claim is dismissed due to qualified immunity.

**C. § 1983 Claims Against Keyport Defendants**

Plaintiffs also assert §1983 claims against Keyport Defendants: the false arrest and imprisonment claim and failure to train claims under theories of both supervisory liability and municipal liability. As an initial matter, the Keyport Police Department is not a party that can be sued under § 1983, so all claims against it must be dismissed. *See McGovern v. Jersey City*, No. 98–5186, 2006 WL 42236, at *7 n.4 (D.N.J. Jan. 6, 2006) (police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of local municipalities, not separate entities), *Padilla v. Twp. of Cherry Hill*, 110 Fed.Appx. 272, 278 (3d Cir. 2004) (same), *DeBellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D.Pa. 2001) (same).

Plaintiffs' § 1983 claims against the remaining Keyport Defendants must also be dismissed. Section 1983 imposes civil liability upon "any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Padilla,* 110 Fed. Appx. at 278 (citation omitted). Unlike unincorporated police departments or municipal courts, municipalities are legal entities amenable to suit for their unconstitutional policies or customs. *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 690 (1978). To recover against a municipality, a plaintiff must "demonstrate that municipal policymakers, acting with deliberate indifference or reckless indifference, established or maintained a policy or well-settled custom which caused a municipal employee to violate plaintiffs' constitutional rights and that such policy or custom was the 'moving force' behind the constitutional tort." *Hansell v. City of Atlantic City,* 152 F.Supp.2d 589, 609 (D.N.J. 2001). A municipality may also be liable if an employee acts unconstitutionally and the municipality failed to adequately train or supervise that employee. *City of Canton v. Harris,* 489 U.S. 378, 380 (1989).

Plaintiffs contend that the Borough of Keyport and Casaletto, individually as a policy maker, "displayed a complete failure to effectively investigate inappropriate conduct by police officers." ECF No. 40 at 18. They assert that "customs and policies set by Defendant Casaletto, Defendant Township of Keyport's internal affairs is inadequately run and the police officers are allowed to unlawfully arrest individuals with impunity," which "allows its officers to intimidate, harass and unlawfully arrest individuals without any oversight or correction." *Id.*

Beyond these conclusory allegations, however, Plaintiffs do not proffer evidence "specify[ing] what exactly that custom or policy was," *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009), a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007) (internal quotations omitted), or "identify specific deficiencies in any training program to which Defendants might have responded." *Ianuale v. Borough of Keyport*, No. 16-9147, 2017 WL 3503332, at *3 (D.N.J. Aug. 16, 2017).

Thus, Plaintiff's § 1983 claims against Keyport Defendants are dismissed.

### D. NJCRA Claim

The NJCRA was modeled after § 1983, and, thus, courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983." *Trafton v. City of Woodbury,* 799 F.Supp.2d 417, 443–44 (D.N.J.2011); *Chapman v. New Jersey,* Civ. No. 08–4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart ...."); *Armstrong v. Sherman,* Civ. No. 09–716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."). Accordingly, Plaintiff's New Jersey State Constitution claim will be interpreted analogously to her § 1983 claim. *Trafton,* 799 F.Supp.2d at 443–44; *see Hedges v.*

*Musco,* 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment). Because the Court has concluded that there was no violation of Plaintiffs' constitutional rights in this case, and that Plaintiffs' § 1983 claims fail, Plaintiff's NJCRA claim, also fails. Summary judgment is granted in favor of Defendants on Plaintiff's claim under the NJCRA.

### E. NJTCA Immunity

Defendants also seek dismissal of Plaintiffs' remaining common law tort claims because, they argue, the New Jersey Tort Claims Act ("NJTCA") immunizes them from claims of this type.

#### 1. Claims Against Officer Defendants

Under the NJTCA a public employee is generally "liable for injury caused by his act or omission to the same extent as a private person." N.J.S.A. § 59:3-1(a). However, the provisions of the NJTCA immunize from liability public employees who have acted "in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. Specifically, the NJTCA provides that a "public employee *is not liable* if he acts in good faith in the execution or enforcement of any law."[6] N.J.S.A. § 59:3–3 (emphasis added). "In ascertaining whether good faith immunity exists, the New Jersey Supreme Court opined that '[a] public employee either must demonstrate

---

[6] The New Jersey Tort Claims Act provides immunity from liability for public employees if they "act[ ] in good faith in the execution or enforcement of any law." N.J. Stat. Ann. 59:3–3. "[T]his Act gives a public official less protection than the right under federal law . . . because it 'provides a government official with immunity from liability, not immunity from suits arising from the performance of official duties.'" *Wheeler v. Jersey City Police Dep't,* No. 16-1869, 2017 WL 244784, at *2 (3d Cir. Jan. 20, 2017) (quoting *Giuffre v. Bissell,* 31 F.3d 1241, 1248 (3d Cir. 1994)). In this case, however, immunity from liability is sufficient to defeat Plaintiff's claims.

'objective reasonableness' or that he behaved with 'subjective good faith.'" *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 445 (D.N.J. 2011) (quoting *Alston v. City of Camden,* 168 N.J. 170, 773 A.2d 693, 703 (2001)).[7] "The New Jersey Supreme Court further clarified that '[t]he same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act.'" *Id.* at 445 (quoting *Wildoner v. Borough of Ramsey,* 162 N.J. 375, 744 A.2d 1146, 1153 (2000)). *See also Sheppard v. Sheriff*, No. 11-2398 (NLH), 2016 WL 3912845, at *8 (D.N.J. July 19, 2016) (same); *Mantz v. Chain*, 239 F. Supp. 2d 486, 507–08 (D.N.J. 2002) (same). "Therefore, if the alleged tort and alleged constitutional violation arise out of the same conduct, and the Court concludes that no constitutional violation occurred because the public employee's actions were objectively reasonable, the NJTCA's good faith provision applies and bars prosecution of the tort claim." *Ibid.*

However, the NJTCA strips a public employee of any immunity if that employee is found to have engaged in "willful misconduct." N.J.S.A. 59:3-14(a). Specifically, N.J.S.A. § 59:3–14a provides that "[n]othing in this act shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. § 59:3–14a. "[W]illful misconduct requires 'much more' than mere negligence" and "fall[s] somewhere on the continuum between simple negligence and the intentional infliction of harm." *Alston,* 168 N.J. at 185, 773 A.2d 693 (citation omitted). "[I]n order to recover for injuries allegedly produced by willful and wanton misconduct, it must appear that the defendant with knowledge of existing conditions, and

---

[7] This defense, however, is unavailable when a public employee is liable for false arrest. *Toto v. Ensuar,* 196 N.J. 134, 952 A.2d 463, 470 (2008)

conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result." *Id.* (quoting *McLaughlin v. Rova Farms, Inc.,* 56 N.J. 288, 305, 266 A.2d 284 (1970)). "The New Jersey Supreme Court has recognized that 'good faith' and 'willful misconduct' are 'not necessarily two sides of the same coin' and 'the distinction between the two is a narrow one.' *Whichard v. Willingboro Twp.*, No. CIV.A. 13-3606 JBS, 2015 WL 5054953, at *8 (D.N.J. Aug. 26, 2015) (quoting *Alston,* 168 N.J. at 187, 773 A.2d 693 (quotation omitted)).

In this case, the Court has determined in its consideration of Plaintiffs' § 1983 claims, that Officer Defendants' conduct was objectively reasonable. Officer Defendants, therefore, also did not engage in any willful misconduct. Because Plaintiffs' New Jersey state common law assault and battery, malicious prosecution, invasion of privacy, and abuse of process tort claims arise from the same alleged conduct as Plaintiff's § 1983 claims, the NJTCA's good faith immunity provision applies to bar Plaintiff's tort claims against Officer Defendants. *See Hickman v. Borough*, No. 15-3578, 2017 WL 1197806, at *15 (D.N.J. Mar. 31, 2017).

The only common law claim that does not arise from the same conduct is the civil conspiracy claim in which Plaintiffs accuse Defendants of "collaborating to create false police reports in an attempt to cover up their deprivation of their civil rights." Compl. at ¶ 162. Plaintiffs include neither argument nor statement of fact supporting this claim in its summary judgment submissions, however, so this count is also dismissed for failure to establish a prima facie case.

2. <u>Claims Against Keyport Defendants</u>

Keyport Defendants also assert good faith immunity under the NJTCA. As an initial matter, the NJTCA provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. However, an exception exists for public entities where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful misconduct." N.J. Stat. Ann. § 59:2-10. "Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the [municipality] is immune from liability for the assault and battery claims." *Sims v. Tropicana Entm't, Inc.*, No. 13-1981, 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016) (citing *Merman v. City of Camden*, 824 F. Supp. 2d 581, 597 (D.N.J. 2010)). Accordingly, even had the Court found that Officer Defendants' conduct sufficient to support a claim for the intentional tort of assault and battery, malicious prosecution, abuse of process, the defendant municipality, Keyport, could not, as a matter of law, be held liable under a theory of respondeat superior.

Moreover, as to each of Plaintiffs' tort claims, a "public entity is *not liable* for an injury resulting from an act or omission of a public employee where the public employee is *not liable.*" N.J.S.A. 59:2-2(b) (emphasis added). *See Kowalsky v. Long Beach Twp.*, 72 F.3d 385, 392 n.8 (3d Cir. 1995) ("Section 59:2–2b provides: '[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.' If the public employee defendants here are not liable, neither are the municipalities."); *see also Ward v. Barnes*, 545 F. Supp. 2d 400, 420 (D.N.J. 2008) (granting summary judgment on negligence claims in favor of public entity because summary judgment granted in favor of the individual defendants); *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 200 n.14 (D.N.J. 2008), *on reconsideration in part*, No. CIV. 07-5918, 2009 WL 1066125 (D.N.J. Apr. 20, 2009)

(dismissing negligence claims against municipal board because the individual defendants were immune from negligence claims under the NJTCA).

Here, the Court has determined that the Officer Defendants are entitled to NJTCA immunity from Plaintiffs' state law tort claims. NJTCA immunity is immunity from liability. *Giuffre*, 31 F.3d at 1248. Accordingly, the Court having held that Officer Defendants are not liable for these common law tort claims, Keyport cannot be liable for such torts under a theory of respondeat superior. N.J.S.A. 59:2-2(b)

Only one claim against Keyport Defendants, negligent hiring, is not premised on a theory of respondeat superior. New Jersey courts "recognize the tort of negligent hiring, where the employer either knew or should have known that the employee was violent or aggressive, or that the employee might engage in injurious conduct toward third persons." *Davis v. Devereux Found.,* 209 N.J. 269, 292 (2012) (internal citations and quotations omitted). This tort has two fundamental requirements. *See Di Cosala v. Kay,* 91 N.J. 159, 173 (1982). First, the employer must have "kn[own] or had reason to know of the particular unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Id.* Second, "through the negligence of the employer in hiring the employee, the latter's incompetence, unfitness or dangerous characteristics proximately caused the injury." *Id.* at 174. Plaintiffs have not presented any facts at summary judgment indicating that Defendants had reason to know of any "particular unfitness, incompetence, or dangerous attributes" of any of the Defendants. Therefore, this claim is also dismissed.

Because the NJTCA bars Plaintiffs' common law tort claims against Defendants, Defendants' summary judgment motions are granted.[8]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgement are **GRANTED** in their entirety, and all claims against Defendants are, therefore, **DISMISSED**. The case is **CLOSED.**


Dated: October 16, 2018                              /s/ Freda L. Wolfson
                                                     Hon. Freda L. Wolfson
                                                     United States District Judge

---

[8] Because I conclude that Plaintiffs' claims are barred by qualified and NJTCA immunity, I need not reach the issue, raised by Defendants, of whether any the statute of limitations bars any of Plaintiffs' claims.